The next case today is N. Ray Petition for Order Directing Release of Records Appeal No. 20-1836. Mr. Hinshelwood, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court, Brad Hinshelwood of the United States. If I may, I'd like to reserve two minutes of my time for rebuttal. Yes. Thank you. Your Honors, Federal Rule of Criminal Procedure 6E regulates the disclosure of grand jury materials. It reaffirms a longstanding rule that grand jury materials are secret and then provides for enumerated exceptions that reflect policy judgments about what purposes justify lifting that secrecy. A district court lacks authority to circumvent those rules and those exceptions by invoking its inherent authority to order disclosure solely based on historical or academic interest about what occurred before the grand jury. Now those conclusions about Rule 6E follow from its text and structure. So Rule 6E-2 states that unless these rules provide otherwise, matters occurring before the grand jury cannot be disclosed. In the following subsection, Rule 6E-3, which is titled Exceptions, provides a detailed list of exceptions to that general rule of secrecy, including five exceptions addressing when a district court may authorize disclosure of grand jury matters. Now, none of those exceptions permits disclosure solely on the basis of historical interest. And as the Supreme Court has repeatedly made clear, a court cannot invoke its inherent authority to circumvent restrictions laid out in a rule. So- Mr. Hinchwood, if you were listening to the earlier arguments, you heard me say courts are reluctant to make broader rulings than we have to. So you can view this case as an up-or-down inherent authority or no inherent authority. Or you can view the case in more limited terms as, well, regardless of the outcome of that So could I get you to frame your argument a bit more narrowly? Certainly, Your Honor. As I think you're pointing to, we have obviously also advanced the point that even if you thought the text of Rule 6E left some- No, no, no. I'm saying we're not making any assumptions either way. We're only answering a very narrow question before us. Right. Another way to frame this particular question would be to say whether a district's inherent power, which ordinarily goes to a court's ability to manage and protect proceedings that are taking place before it, extends to the kind of judgment that a court is making here. It decides that the rule of grand jury secrecy ought to be displaced or set aside on sort of a wholly new basis, right? That historical interest, public interest in a particular grand jury proceeding justifies lifting the traditional rule of grand jury secrecy. And as we've, I think, explained in some detail, we don't think that kind of judgment is within a court's sort of inherent powers because those powers, again, go to a court's ability to manage and protect proceedings before it. And it also is reflected, Your Honor, if you look at the history of disclosures of grand jury materials before the promulgation of Rule 6E in 1946. And so in those circumstances, what courts would do is disclose grand jury materials in connection with the proceeding. Whether it was an indictment before the court or a judicial proceeding before another court or before that court, there was always a linkage to a particular proceeding. And that follows not only from the general description from the Supreme Court and this powers, but also from the fact that a court's power over the grand jury is narrower, right? The Supreme Court made that clear in Williams. This court made the same point in cases like Stern, that where a court is sort of messing with the fundamental attributes of the grand jury, of which secrecy is unquestionably one, the district court's ability to exercise its inherent power in that way is quite limited. So we think, of course, that that provides even more reason to adopt the textual approach that we've provided. We think those arguments are complementary. I recognize that you asked me to sort of focus on the latter points. But that's what, in 1946, the rule originally codifies. It says grand jury materials are secret. Mr. Henshelwood, given the logic of your argument, I take it you reject the seventh circuit's majority opinion, which says, gosh, we think grand juries are part of the federal judiciary and are subject to this. So I take it you are making a two-part argument. That is not true. Grand juries are independent. And it may be that once an indictment is returned and that then goes before the court, perhaps there is some form of inherent authority as to managing those court proceedings. But no indictment was ever returned here. And so it never made that transition point. Have I understood you? You're certainly right that we disagree with Carlson on two levels. And I'm happy to walk through both. As to your specific question about the grand jury proceedings here, I don't think the fact that this did not result in an indictment is what's dispositive, even as to the sort of scope of the inherent power. Even if this had resulted in an indictment, the court's inherent power in that circumstance would be things like, for example, what the Supreme Court recognized in Bank of Nova Scotia, that the court could potentially dismiss an indictment under its inherent power based on misconduct before the grand jury. That wouldn't lead to a conclusion that I also have the authority to disclose all records of the grand jury just because I think there's a particular interest in those materials. Because again, that's not tied to the proceeding before the court. So I don't think that the presence or absence of the indictment is the calculus as to the ability to disclose, although it certainly alters, you know, that's why the rule, for example, one of the enumerated exceptions from the very beginning, from 1946, and predating the rule has always been a request to gain information about grand jury matters for the purpose of challenging an indictment. That's Romanat II in the current Rule 6E3E, and it was part of the original rule, and it's also reflected in the pre-Rule 6E cases. So that sort of history, as the 11th Circuit pointed out in pitch, those cases, that sort of preexisting power is what gets codified in the original Rule 6E. And of course, over time, Congress has added, and the Supreme Court in its rulemaking capacity have added additional exceptions, you know, so Romanat III through V in the current Rule 6E3E, in addition to the other Rule 6E3 exceptions, some of which, you know, many of which come in at sort of different times in the history of Rule 6E. And so that process, you know, underscores the fact that, you know, historically there was this sort of limited ability to disclose. Congress, of course, can, or the Supreme Court in its rulemaking capacity, can, of course, expand those circumstances if it wishes. And in fact, the Rules Committee right now is considering proposals to amend the rule to provide for some sort of mechanism for disclosures of historically significant materials. But it's not the case that we can sort of work backwards to say, well, inherent power always enabled us to do this, or that the text of the rule itself always permitted that kind of judgment. Five minutes remaining. Mr. Hinchelwood, underlying this case is perhaps not presented by this case, but a concern about government retaliation against, forbidden by the First Amendment, against those who engage in unpopular speech, or as the newspapers tell us recently, members of the media who find that their phones were accessed by an administration unhappy with what was being reported. Suppose there is a judicial proceeding that alleges the government has taken retaliatory actions, let's make it easy, against a member of the media, and that that violates the First Amendment. And that part of the retaliation is invoking a grand jury. I'll adopt your line, it's irrelevant whether an indictment is returned or not. And the grand jury is convened as part of the retaliatory pattern in violation of the First Amendment. I understand that is not the fact pattern in this case. But in that judicial proceeding, could the court presiding over that proceeding provide access to grand jury records sought in discovery by the plaintiff? Your Honor, so Rule 6E3E1, which is the judicial proceeding exception, obviously would, I think, govern in that circumstance, right? The question would be whether both the, you know, sort of the request falls within that exception, and then whether the particularized needs standard, which the Supreme Court has laid out under that exception, would be met. And so obviously, for understandable reasons, I'm reluctant to opine on how any specific request might play out. But certainly, you would make arguments under that exception. And the Supreme Court's decision, for example, in Douglas Oil, which lays out those factors, instructs courts very carefully at, you know, what is the nature of the claims that the plaintiff is bringing? Are there alternative avenues to obtain the same information? You know, are there ways to limit the disclosure as narrowly as possible? So there would obviously be a lot of sort of discretionary judgments built into that sort of case. But on the premise that Your Honor is asking about seeking grand jury materials for use in a judicial proceeding, I mean, the rule accounts for that. There's an exception for that. And of course, some of the circuits have made the argument that these requests then become judicial proceedings. And arguably, E1 allows for the court then meeting the standard of particularized need to allow disclosure. So what is the response? Well, Your Honor, I'm not aware of a circuit that has held that. To my knowledge, every circuit that's addressed that question has actually rejected that line of evidence. So the D.C. Circuit in Fund for Constitutional Government, the Second Circuit in Biagi, the pitch case in the Eleventh Circuit at the panel stage, actually the panel rejected that argument, even though it concluded there was inherent authority. And Your Honor, I think that goes back to, first of all, Douglas Oil itself, when it talks about the judicial proceeding exception, talks about how it's for avoiding injustice in another proceeding, right? So it's for avoiding going on in the courts, whether, you know, potentially state court, but also federal court. And that follows, Your Honor, because I think, as you point out, on that theory, literally any request for grand jury information would fall within sort of that first exception. And it would be very difficult to understand how any request wouldn't fall within that type of request. So what do you say to the argument that the cold case legislation shows that Congress, you know, you can't make sense of it unless you understand it as Congress reads the statute like petitioner, not like you. I don't think that obviously the Eleventh Circuit majority dealt with that argument. And I think only a bigger group, just Judge Rosenbaum's dissent in that case, you know, and as the Eleventh Circuit was explaining there, the text of that statute suggests Congress envisioned procedures for disclosure that are, in fact, quite different from what we're talking about here. And we're talking about, under that statute, a board would have been appointed by the president and confirmed by the Senate, which would have made judgments about which records to request, under what circumstances those requests ought to be made. And then the Attorney General play a role in making a further decision about whether disclosure, you know, whether he was going to sort of recommend disclosure. And then at that point, the statute specifically indicated that the particularized needs standard would be met. So, you know, once those sort of judgments were... Time has expired. So in that circumstance, we don't believe there's any inconsistency with saying, you know, as to, I mean, the fact that Congress makes specific provision for some historic records, if anything, undermines a suggestion that there's a sort of free-ranging authority as to other ones, not least because that would be inconsistent with the court's general inherent authority, you know, as we were discussing at the beginning. And the petitioner seems to view the relationship between the courts and the rules process differently than you do. The petitioner seems to point at the courts in almost a common law way, considering and developing over time certain reasons for disclosure with the rules committee, then looking at them. And when it finds one that looks like it should be nationalized and uniform, it puts it in the rule. And that's a healthy process of common law going along and common law experience informing policy. What's your response to that? It's two part, Your Honor. So the first is that there are, I think, the specific examples that we've talked about, namely the amendments in the early to mid-70s when government prosecutors could share information with sort of specialized people like accountants, forensic accountants, or other people from whom they needed assistance in prosecuting or understanding information. And in the sort of later discussions in the 80s about sharing between grand juries, there were actually sort of disagreements among courts about whether they already authorized that sort of disclosure. And so the fact that there are ambiguities in the rule, that the rules committee reacts to those ambiguities should not be a surprise. And there may be other aspects, Your Honor, of grand jury practice where, you know, courts have developed things unrelated to disclosure, where, you know, perhaps the rules committee picks up on those. But as to disclosure itself, I think what we've seen is there's been disagreement. We talked about, for example, in our brief, the circuit split on the question of whether information can be shared between federal grand juries, right, which the committee resolved in 1983. So, you know, and in fact, in the same way, the committee now is, you know, we hope going to resolve the question of whether, and under what circumstances, historically significant materials might be made public. So we don't view that as altering the basic premise that, you know, and I should add, even those changes, right, sort of disclosures between grand juries or disclosures to assist the prosecutor in carrying out the case are quite different from a disclosure that just says, I think disclosure is worthwhile because it's of interest, right? Again, going back to sort of the differences between the kinds of power that are being exercised in those kinds of judgments. So, you know, I think it's interesting that there's, I don't think there's any prior example of an exception, this sort of sweeping where a court has ever sort of endorsed that prior to something like this. If there are no questions, I'll reserve some time for rebuttal. You have two minutes reserved. Thank you. Thank you, Mr. Henshelwood. At this time, you can please mute your audio and video. Attorney Schreiner Briggs, if you could unmute your audio and video. Sorry, Mr. Schreiner Briggs. And if you could introduce yourself on the record to begin. Good afternoon, Your Honor, and may it please the court. I'm Jacob Schreiner Briggs for the Appellee, Professor Jill Lepore, and with me today is my clinical supervisor, Charles Crane. The district court in this case, relying on its inherent authority, disclosed 50-year-old records from a federal grand jury investigation to the leak and dissemination of the Pentagon Papers. This court could affirm that ruling for two reasons. First, federal courts possess inherent power at common law to release grand jury records, and the federal rules of criminal procedure have not displaced that power. And second, the district court, by adopting and applying the Second Circuit's Craig test, properly exercised its discretion in this case. On the first point, Your Honor, regarding a court- Could I get you please to reverse the order of your argument? And you heard my discussion with your opponent about a narrow look at this case. So could you address why, if one looks narrowly at the case, why this was an appropriate exercise, or it was not, without getting into the general question of inherent authority? And that's actually a very different question than the Craig standard question, and I don't particularly see any reason why the First Circuit would choose to follow the Craig standards in any event. So could you address my questions? I can do my best, Your Honor. I think a narrow reading of this case would hold that district courts have discretion to determine whether to release grand jury records, and that was true of common law, even if not framed in terms of inherent authority, it's evidenced by the pre-rule decisions. And in this case, it's clear that whether this circuit adopts the Craig standard or some other more narrow standard, the interest in disclosure outweigh the interest in secrecy, which in this case are de minimis. I don't think the government contends at that point. I think the government's opposition here is a bigger picture, where they're contesting both the inherent power and also furthering a different reading of the rule. So I think here, a narrow reading would say, just as a simple equitable matter, the interest favoring disclosure outweighs secrecy interests, and that the text of the rule has not displaced the ability of courts to exercise discretion in making the types of determinations that the district court made in this case. So I'll start with the rule then. So I think first, starting with 6E2A and 6E2B, the rule's plain text makes clear that the only persons subject to the obligation of secrecy are those listed at 6E2B. The court is not listed at 6E2B. Judges are not listed at 6E2B. And so by the plain terms of the rule, the question of whether there's an applicable exception at 6E3E is immaterial because those are exceptions to a rule that doesn't apply to the court in the first place. Our reading instead is that 6E3E serves as a signaling function to courts to inform judges that no special hesitation need to be given before a court releases records in the circumstances contemplated by the rule. That was the Seventh Circuit's reading of the rule in Carlson, and we think it's persuasive because it makes sense of the rule in its greater context. Could you help with the relationship between the rule and what was going on in the courts? The Congress weighed in pretty heavily in 77 with the largely current version of the rule, as I understand it. Prior to then, had any federal court ever relied on inherent authority to release grand jury materials simply because someone said they were of historical interest? Prior to the rule, Judge Kayada, no. There was not a significant release in a pre-rule case that we've been able to find. But I think if you look through the pre-rule cases, namely Atwell and Schmidt, both of It makes clear that the courts understood their discretion to release grand jury records, I think, to be broader than the government portrays. So the Atwell case specifically, which is a 1908 Fourth Circuit case, there the court said that its position was that grand jury evidence should be released when the indictment has been made, the grand jury discharged, and the defendant taken into custody. That is a broader rule of disclosure than when the ends of justice require it in an And I think the Schmidt case furthers that point. There, the Sixth Circuit explained that the responsibility to balance secrecy interests against disclosure interests rests with the court. If we applied your test, would a court consider how historically important a particular grand jury transcript is? Yes, Your Honor, I think that would be appropriate. So then that gets me concerned because how is the court to go about making that judgment without essentially incorporating some ideological slant on what it thinks is important and what it thinks is not important? I think, Your Honor, so it's a difficult question to give a bright line answer to, but I think cases in both the D.C. Circuit and the Second Circuit applying the Craig test, of course, before the McKeever decision in the D.C. Circuit, show that these exceptions, this historical exception is afforded very rarely and in cases where the historical significance of the record being pursued is quite obvious. So in the D.C. Circuit, the Inouye-Cutler case released, which pertained to President Nixon's testimony before Watergate grand juries, and then Inouye-Shepard and Inouye-Nichter actually declined to release other records from those same grand juries with their less significant historical interest. And then the Inouye-Nichter case. Besides, when you say it's quite obvious, I mean, I read a lot of history now that talks about things that are very significant, seeming to me now, where historians 50 years ago didn't even mention them. So can you give me an example of a grand jury proceeding that would not be disclosable within the court's inherent authority, say, 50 or 60 years after it ended, as long as petitioners expressed an interest in seeing it? Certainly, Your Honor. So I think, so as an example, I mean, for instance, if we're talking about a grand jury investigation into a garden variety felony case, investigating a person who is not a historical or political figure, then I think that the passage of time would not be sufficient to release those records at the request of a petitioner, simply because they're old, and the petitioner is interested in them. And I mean, the government... So an indictment of a runaway slave from 1850 who was not a known person, that wouldn't be discoverable. Well, so there, Your Honor, I think the facts are a little bit different. I think the runaway slave example points to something that is not garden variety with regards to the grand jury investigation and would be of historical significance. But I think the broader... You see how just in two minutes, we suddenly had to modify your definition of what would be discoverable and whatnot, and I'm having trouble seeing what the end of it would be. I understand your point, Your Honor. I think it's important to acknowledge that it is difficult on any standard that employs judicial discretion to answer definitively in what cases records will be released and in what cases they will not be. But I think in the bigger picture, the Craig factors or whatever standard gets employed, but just using the Craig factors because that's the most obvious and frequently used example of a standard, there are nine considerations that are taken holistically that move beyond the simple historical relevance. There are also questions of secrecy interest or the identity of the records in question. So even if the historical significance question is difficult to decide in a given borderline, the other factors make clear on a case-by-case basis, whether or not petitioners have met their very high burden to disclose grand jury records. Counsel, I have a related but different concern, which is about who gets to make the choice as to whether something is historically significant and therefore should be released. It is a topic on which there is a great deal of disagreement. The Rules Committee is considering it. Congress has in some ways expressed its intent by passing statutes to allow particular grand jury minutes to be disclosed in connection with particular historic events, which tends to suggest to me that Congress thinks on the whole it's their decision and they can make it by special statute or they can make it by promulgation of the rules working with the Rules Committee. But at this point, unless one adopts a broad inherent authority view of this, there seems to be no authorization for this decision to be made by a single federal district court judge. And then in some ways, you exacerbate the problem by saying the only appellate review is for abuse of discretion. When in fact the topic is being discussed, Congress may choose to act if Congress rejects a recommendation from the Rules Committee that is a type of action by Congress. So you've heard my concerns. What is your response? There are a few responses, Your Honor. So I think starting with Congress, we don't contend that Congress has the final say in this field. Four minutes remaining. Our position is simply that at common law, it was at the discretion of judges to determine whether the interest in disclosure outweighed the interest of secrecy with regard to grand jury records. And that although Congress could displace that discretion, it hasn't by the plain terms of the rule. But the Judge Kayada asked you earlier, was there any history of disclosures made on the basis that historians were interested? And your answer was no. So why would Congress have thought that was a problem for it to deal with in the 1977 amendments? I think, Your Honor, again, a couple of points. One is that it is true that none of the pre-rule cases deal specifically with petitions for to the rule, is that judges had broad discretion to decide when to release grand jury records and not simply in situations in which. Well, that begs the question of when, if ever, such discretion exists. So what's your next point? That, Your Honor, that the text of the rule itself should not be read to be limiting of the court's discretion. OK. Another point. Another point, Your Honor, would be that in this particular case, the court did not abuse its discretion. It employed the correct factors. That test is not binding on this circuit, of course, but we do think they are incredibly useful and prudential in guiding the court's usage of its discretion to make decisions like these. And the government doesn't contend that there are secrecy interests in this case that outweigh disclosure. In fact, quite the opposite is true. Running through the nine factors, we brief these questions. I won't run through all nine of them now. But I think that no one is in disagreement that in this particular case, the grand jury in question is not threatened by this disclosure. This would be a disclosure regarding to subject matter of immense historical significance. The petition was made by an eminent historian and scholar who wants to use this information for her research and to the end of informing the public. This is just one of those cases that I don't think is borderline. To go back to Judge Kayada's concern, any time a test allows a court to exercise discretion, there's a question as to whether that discretion will be abused. But this is not one of those cases. This is a very clear case in which the interest in disclosure outweigh the interest in secrecy. So, Your Honor, if there are no further questions, I think to summarize our position, the court has inherent discretion to make these decisions. The rule did not displace them. The Supreme Court has been clear to displace inherent authority. The rule must make a clear expression that it has done so. That was the court's position in Link v. Wabash and in Chambers v. Nasco. The rules have not done that. By their own terms, they don't obligate the court to secrecy. And so the court maintained discretion here, and it exercises it appropriately pursuant to the Craig factors. But there are no other questions, Your Honors. I will rest on the briefs. I thank the court for its time, and I ask it to affirm. Thank you. Thank you, Your Honor. Thank you. We'll hear from the government now. It has rebuttal time. Please introduce yourself on the record to begin. Yes. Brad Hensherwood for the United States again. Just one brief point, Your Honors, which is I think a lot of the questioning so far today has really illustrated the type of judgment that's being made here, which is a system-level judgment about what sort of purposes justify the disclosure of grand jury materials and which ones do not. And whatever particular view the government might have or other people might have about the exact balance of those considerations, those types of judgments are simply outside the kin of a district court's inherent power, where they have nothing to do with the actual management or protection of a proceeding before the court. That's part of why I think you don't see cases for decades, even after the promulgation of the rule. It sought disclosure. You must admit there is some irony here in your comments and our interest about historical practices in informing our judgment. Certainly, history is informative insofar as it tells us what kinds of powers district courts possess. And I think what's interesting here is I think petitioner's position here is really a question about the level of generality at which you view the sorts of disclosures that are being sought here. So petitioner's position is essentially district courts had authority to disclose, and that authority reached any type of judgment to disclose for essentially any purpose, as long as they sort of made some rough balance between the interest and secrecy. But there's simply no evidence that that sort of judgment was being contemplated, both because inherent power doesn't usually reach that broadly. Instead, it's generally more confined, as we've discussed, and also because specifically with respect to the grand jury, it's even more confined than usual, precisely because of the independence, the sort of arms-length relationship that the grand jury has with the district court and the need to protect its ability to perform its functions, of which secrecy is an absolutely crucial part. So with that, unless there are further questions. Now, Judge Kayada's comments make me think someday a historian will look into this issue of access to grand jury minutes and will use reported decisions to write the article. Thank you. Well argued on both sides. The court is most appreciative. Thank you. That concludes argument in this case. Mr. Schreiner-Briggs, Attorney Crane, and Attorney Hinshelwood, you should disconnect from the hearing at this time.